**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **H-W TECHNOLOGY, L.C.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-636-G** |
| | § | |
| **OVERSTOCK.COM, INC.,** | § | |
| **Defendant.** | § | **Pretrial Management** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By standing order of reference dated March 5, 2012, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.  Before the Court are the parties' claim construction briefs.  Based on the relevant filings and applicable law, the Court recommends construction of the disputed claim terms as set forth below.

## I. BACKGROUND

On April 28, 2009, the United States Patent and Trademark Office (PTO) issued United States Patent No. 7,525,955, entitled "Internet Protocol (IP) Phone with Search and Advertising Capability" (the '955 patent).  (doc. 1 at 3.)  The '955 patent is allegedly "directed to novel, unique and non-obvious systems and methods of using a multi-convergence device, including phones commonly referred to as 'smartphones', which are able to converge voice and data within a single terminal, and which allow users of such devices via domain specific applications to receive information and offers from merchants and to complete a transaction with one of said merchants without having to generate a voice call." (*Id.*)  The '955 patent contains 24 patent claims, consisting of three independent claims (Claims 1, 9, and 17) and 21 dependent claims.  (doc. 40-1 at 43-44.)  On March 1, 2012, H-W Technology L.C. (Plaintiff) filed this patent infringement action, alleging

that it owns all the rights to the '955 patent, and that Overstock.com, Inc. (Defendant) has infringed

the '955 patent.  (doc. 1 at 3.)  Defendant filed a counterclaim seeking a declaration that it is not

infringing the '955 patent and that the '955 patent is invalid and unenforceable.  (doc. 12 at 1, 5-8.)

The parties filed their opening claim construction briefs on March 18, 2013 (*see* docs. 37,

39), and their responsive claim construction briefs on April 18, 2013 (*see* docs. 48, 49).  They filed

a Joint Claim Construction Chart on May 2, 2013.  (*See* doc. 52.)  The parties agree that two

disputed terms require construction, and they have proposed agreed constructions for two additional

terms.

## II.  CLAIM CONSTRUCTION PRINCIPLES

"[T]he interpretation and construction of patent claims, which define the scope of the

patentee's rights under the patent, is a matter of law exclusively for the court."  *Markman v.*

*Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370

(1996).  To ascertain the meaning of claims, the court considers three sources: "the claims, the

specification, and the prosecution history."  *Markman*, 52 F.3d at 979 (citations omitted).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to

which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381

F.3d 1111, 1115 (Fed. Cir. 2004)).  The Court must therefore first "look to the words of the claims

themselves, both asserted and nonasserted to define the scope of the patented invention."  *Vitronics*

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Bell Commc'ns Research,*

*Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995)).  "[T]he words of a claim 'are

generally given their ordinary and customary meaning.'"  *Phillips*, 415 F.3d at 1312-1313 (quoting

*Vitronics*, 90 F.3d at 1582) (citing *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313 (citing *Innova*, 381 F.3d at 1116; *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003); *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005); *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353 (Fed. Cir. 2000)).  The Federal Circuit has recognized two instances in which the "ordinary" meaning does not apply, however: (1) when a patentee acts as his own lexicographer, and expressly sets out a definition in the specification; and (2) when the patentee expressly disavows claim scope in the specification or during the prosecution process. *Medtronic Inc. v. Boston Scientific Corp.*, 695 F.3d 1266, 1275 (Fed. Cir. 2013); *see also Toro Co.*, 199 F.3d 1299.

"Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314 (citing *Vitronics*, 90 F.3d at 1582).  "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* (citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997)).  "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id.* (citing *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)).  In particular, "the

presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)).

Next, because the claims do not stand alone, but are part of a fully integrated written instrument comprised primarily of the specification, the Court must review that specification in construction claim terms. *Id.* at 1315 (citing *Markman*, 52 F.3d at 978-79). By statute, the specification must describe the claimed invention in "full, clear, concise, and exact terms" so as to enable those of ordinary skill to make and use that invention. 35 U.S.C. § 112, ¶ 2; *Phillips*, 415 F.3d at 1316. Thus, "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). Limitations should not be imported from the specification, however. *Id.* at 1323.

Further, when the patent's prosecution history is in evidence, the Court should consider that history in construing claim language. *Markman*, 52 F.3d at 980 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966)). The prosecution history, which the Federal Circuit has designated as intrinic evidence, consists of the complete record of the proceedings before the PTO, as well as the prior art cited during the examination of the patent. *Phillips*, 415 F.3d at 1317 (citing *Autogiro Co. v. U.S.*, 384 F.2d 391, 399 (Ct. Cl. 1967). "The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the court of prosecution, making the claim scope narrower than it would otherwise be." *Id.* However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it

often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id*. (citing *Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1380-82 (Fed. Cir. 2002); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996)).

In addition to intrinsic evidence, the Court may under certain circumstances turn to extrinsic evidence in construing claim terms. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. "While extrinsic evidence can shed useful light on the relevant art . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language. *Phillips*, 415 F.3d at 1317 (internal quotation omitted) (citing *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (quoting *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004))); *Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1337 (Fed. Cir. 2004)). Extrinsic evidence is less significant than intrinsic evidence because it is less reliable. *Id*. at 1318. For example, "extrinsic evidence by definition is not part of the patent and does not have the specification's virtue of being created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning." *Id*. Despite this and other drawbacks of relying on extrinsic evidence, it "can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean[.]" *Id*. at 1319. *Phillips* directs courts exercising their discretion to admit and use extrinsic evidence to "keep in mind the flaws inherent in each type of evidence [bearing on claim construction] and assess that evidence accordingly." *Id*. It does not preclude district courts from using dictionaries appropriately as a means to better understand the underlying technology or assist in understanding the commonly understood meaning of terms. *Id*.

at 1322.  However, *Phillips* cautions that courts must be careful to consider dictionary definitions

within the context of the patent itself.  *Id*. at 1319-22.

## III.  ANALYSIS

At issue are terms found in Claims 9 and 17 of the '955 patent.  Claim 9, with the terms at

issue italicized, reads as follows:

> A method for performing contextual searches on an *Internet Phone (IP) phone* comprising the steps of:
>
> receiving a command to perform a contextual search;
>
> receiving search criteria from *a user of said IP phone*;
>
> submitting said search criteria to a server coupled to said *IP phone*; and receiving from said server a list of merchants matching said search criteria and information regarding each of said merchants in said list;
>
> wherein said information received by *said user* comprises a variety of offers, wherein *said user* selects one of said variety of offers associated with said one of said merchants listed, wherein said selected offer is transmitted to said one of said merchants listed electronically; and
>
> wherein *said user's* contact and payment information is not transmitted to said one of said merchants listed, wherein *said user's* contact and payment information is available to said one of said merchants listed.

(Doc. 40-1 at 43.)  Claim 17, also with the terms at issue italicized, reads as follows:

> A tangible computer readable medium encoded with computer program for performing contextual searches on an *Internet Phone (IP) phone* comprising the steps of:
>
> receiving a command to perform a contextual search;
>
> receiving search criteria from *a user of said IP phone*;
>
> submitting said search criteria to a server coupled to *said IP phone*; and
>
> receiving from said server a list of merchants matching said search criteria and information regarding each of said merchants in said list;

6

wherein *said user* completes a transaction with at least one of said merchants listed without the need to generate a voice call;

wherein said information received by *said user* comprises a variety of offers, wherein *said user* selects one of said variety of offers associated with said one of said merchants listed, wherein said selected offer is transmitted to said one of said merchants listed electronically; and

wherein *said user's* contact and payment information is not transmitted to said one of said merchants listed, wherein *said user's* contact and payment information is available to said one of said merchants listed.

(*Id*. at 43-44.)

A.    <u>**Internet Protocol (IP) Phone/Internet Phone Phone/IP Phone**</u>[1]

Plaintiff proposes a construction of the terms "Internet Protocol (IP) Phone" and "IP Phone" as "a phone capable of converging voice and data in a single terminal and capable of being used on different communication infrastructures."  (Doc. 52 at 4.)  It maintains that such a construction is consistent with the ordinary and customary meaning of the claim terms, and that the inventors did not unequivocally disclaim such a construction during prosecution.  (Doc. 39 at 8, 12.)  In support, Plaintiff cites to language in the specification that refers to an IP phone generally as a "converged communications terminal", and also that describes the IP phone's ability to perform additional functionality than traditional Public Switched Telephone Network (PSTN) phones, given its ability to converge voice and data within a single terminal.  (Docs. 39 at 13; 40-1 at 2, 30.)  Plaintiff also relies on inventor testimony to demonstrate that the term "IP phone" was intended to have a broad meaning–consistent with Plaintiff's proposed construction.  (Doc. 39 at 16-18.)  It argues that the inventors essentially "redefined" the disputed term in the specification, and that the Court should

---

[1]  Plaintiff maintains that the term "Internet Phone (IP) Phone in claims 9 and 17 is a typographical error, and that the term should instead read "Internet Protocol (IP) Phone as in claim 1.  (Doc. 39 at 8 n. 8.)  Defendant took no position on this issue.

adopt the patentee's lexicography. (*Id.*)

Plaintiff's proposed construction is drawn from language in the patent abstract, which describes the nature of the invention as:

> A software platform in an Internet Protocol (IP) phone having the ability to be used with different communication infrastructures such as broadband, wireless communication and Plain Old Telephone Systems (POTS) service. Further, the software platform in the IP phone has the ability to be used with different applications operating on the IP phone. Further, the IP phone has the ability to perform additional functionality than traditional Public Switched Telephone Network (PSTN) phones, such as searches and advertising, given its ability to converge voice and data within a single terminal.

(Doc. 40-1 at 2.)

The abstract supports Plaintiff's construction in that it recognizes the IP phone's ability to converge voice and data within a single terminal. There is less support for the part of Plaintiff's construction that requires the IP phone be capable of use on different communication infrastructures, however. Viewed in context, the language cited by Plaintiff describes "[a] *software platform . . .* having the ability to be used with different communication infrastructures[,]" and having "the ability to be used with different applications operating on the IP phone." (*Id.*) This reading is borne out by the part of the patent that bears the subtitle "Technical Field." (*Id.* at 30.) It explains that the Internet Protocol ("IP") phone described in the patent has "search and advertising capability that *includes a [software] platform adaptable to be used with different applications* running on the IP phone *as well as adaptable to be used with different communication infrastructures.*" (*Id.* (emphasis added)) The italicized language modifies the term "software platform," not the IP phone–as is made explicit by the following language in the specification:

> Although the present invention is described with reference to an Internet Protocol (IP) phone it is noted that the principles of the present invention may be applied to any Internet connected device, such as an Internet appliance. It is further

8

noted that embodiments applying the principles of the present invention to such Internet connected devices would fall within the scope of the present invention.

(*Id.* at 32.)

Additionally, the inventors' litigation-derived testimony about the meaning of the disputed term cannot overcome the language of the patent. *See Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008) ("The testimony of an inventor' cannot be relied on to change the meaning of the claims."). Nor is it the kind of lexicography which governs the definition of a claim term. *Id.*; *see also Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 889 (Fed. Cir. 1984) ("The litigation-induced pronouncements of [the inventor] have no effect on what the words of [the patent] in fact do convey and have conveyed during its term to the public."). A patentees acts as his own lexicographer only when a definition is expressly and unequivocally set out in the patent. *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477-78 (Fed. Cir. 1998); *Lear Siegler, Inc.*, 733 F.2d at 889 ([A]n inventor is permitted to define the terms of his claims. Nevertheless, the place to do so is in the specification of the inventor's application[.]") The language cited by Plaintiff is not a definition. The Court should therefore reject Plaintiff's proposed construction of the term "IP phone" because the definition it proffers mixes the attributes of an IP phone with the attributes of the patentee's invention–a software platform adaptable for use with different communication infrastructures.

Defendant proposes a construction of the terms "Internet Protocol (IP) Phone" and "IP Phone" as "a telephone which can operate and execute voice communication in the same way as conventional telephones either via a Plain Old Telephone System (POTS) or an IP network, and can use the IP network for data applications[.]" (Docs. 27-1 at 1; 52 at 4.) It urges that its construction is derived from an express definition in the patent specification and argues that the Court should

adopt its construction, since the inventors acted as their own lexicographers by defining the term. (Doc. 37 at 4, 6, 12.)  According to Defendant, however, the definition includes only phones which can execute voice communication via *both* POTS and an IP network, *and* perform data applications on the IP network.  (*Id.* at 11.)  To support its position, Defendant points to Figure 1 of the Patent which illustrates an IP phone capable of a direct connection to both an IP network and a public switched telephone network (PSTN).  (*Id.* at 11-12.)

Defendant's proposed construction is drawn from the specification's "Background Information" section.  It reads, in relevant part:

> A phone, referred to herein as an "IP phone" or more generally as a converged communications terminal" may be connected directly to the IP network over which a multimedia phone exchange system can be constructed.  An IP phone is a telephone which can operate and execute voice communication in the same way as conventional telephones either via a Plain Old Telephone System (POTS) or an IP network.  Further, the IP phone can use the IP network for data applications.

(Doc. 40-1 at 30.)  In addition to this definition, the patentees utilize numerous shorthand references for IP phones throughout the specification, e.g., "converged communication terminal," "multi-layer fixed telephone system," "VoIP phone," "converged communication device," "converged communication terminal device," "TADS-enabled device," "TADS client side element," "terminal," and  "end-user terminal."  (*Id.* at 31-38.)

The inventors' inclusion of an express definition is compelling evidence that the Court should adopt the definition as the proper construction of the term IP phone.  However, Defendant's insistence that the definition requires that the IP phone be capable of executing voice communication via *both* POTS and an IP network is at odds with the use of the words "either" and "or" in the definition.  (*Id.* at 30.)  It is also inconsistent with  the specification's parenthetical reference to a "VoIP phone" as an IP phone (*id.* at 33), which indicates that a VoIP phone is a type of IP phone.

*See Novacor Chemicals, Inc. v. U.S.*, 171 F.3d 1376, 1381 (Fed. Cir. 1999) (a parenthetical may be definitional or illustrative in nature); *Haliburton Servs. v. Smith Int'l Inc.*, No. 4:02-CV-269, 2004 WL 305722, at \*5 (E.D. Tex. Feb. 13, 2004) ("Members of all legal professions commonly use a parenthetical following a term to rename or provide an alternative name for the term."). Under Defendant's proposed construction, a phone capable of executing voice communication via VoIP *but not* via POTS could not be an IP phone. By contrast, when the phrase is interpreted as disjunctive, e.g., permitting voice communication via *either* POTS *or* an IP network, the definition *and* the parenthetical reference can be accorded full meaning. *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1312 (Fed. Cir. 2002) ("We have consistently interpreted the word 'or' to mean that the items in the sequence are alternatives to each other."); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1331 (Fed Cir. 2001) (recognizing that "either" and "or" designate alternatives in common usage). The latter interpretation is supported by other language in the specification, e.g., a parenthetical reference to a service provider's converged communications infrastructure as "VoIP and/or POTS/Broadband." (Doc. 14-1 at 38.) Moreover, although Figure 1 shows an IP phone capable of a direct connection to both an IP network and a PSTN, the written description expressly notes that Figure 1 is simply "illustrative" and "is not to be limited in scope to the system disclosed." (*Id*. at 32.) It is improper to import limitations from a single embodiment described in the specification into the claims. *Phillips*, 415 F.3d at 1316.

Because the inventors acted as their own lexicographers in setting out a definition of the terms "Internet Protocol (IP) Phone" and "IP Phone" in the specification, the Court should adopt the definition as the proper construction of the disputed terms. *Medtronic Inc.*, 695 F.3d at 1275; *Toro Co.*, 199 F.3d 1299. In doing so, the Court should reject the conjunctive meaning advocated by

Defendant in its brief and instead ascribe a disjunctive/alternative meaning to the terms "either" and "or" in keeping with language in the claims and specification.

In addition, the Court finds that the definition should include an explanatory phrase drawn from the sentence that precedes the definition, e.g., "connected directly to an IP network[.]"  This construction is consistent with references to the IP phone as a "converged communications terminal" throughout the specification.  It also provides a necessary antecedent basis for the definite article "the" in connection with the term "IP network" in the rest of the definition.  *See Automed Technologies, Inc. v. Microfil, LLC*, 244 F. App'x 354, 359 (Fed. Cir. 2007) (claim term employing definite article 'the' required an antecedent basis) (citing *NTP v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.  It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'").

The terms "Internet Protocol (IP) Phone" and "IP Phone" should therefore be construed as "a telephone, connected directly to an IP network, which can operate and execute voice communication in the same way as conventional telephones either via a Plain Old Telephone System (POTS) or the IP network, and which can use the IP network for data applications."

**B.**      **User of Said IP Phone/Said User**

Plaintiff proposes a construction of the terms "User of said IP Phone/Said User" as "a person or thing that uses an IP phone."  (Docs.  27-1 at 6; 52 at 4.)  It argues this construction is consistent with the ordinary and accustomed meaning of the claim terms, and it maintains that the inventors neither acted as their own lexicographers nor disavowed any subject matter encompassed by the

ordinary meaning of the term "user".  (Doc. 39 at 12, 18-20.)  Plaintiff draws its proposed construction from the Merriam-Webster Dictionary, which defines a user as "a person or thing that uses something[.]"  (Doc. 48 at 12 n.26; Doc. 38-8 at 2.)  Plaintiff urges that under its construction, the IP phone, a server, and a domain specific application (software) (all *things*) could be considered "users."  (Doc. 48 at 10.)

The extrinsic evidence cited by Plaintiff sheds no light on the meaning of the disputed terms.  The dictionary to which Plaintiff resorts is not a technical dictionary, but a general purpose one.  It does not suffice to show the ordinary and customary meaning that the term would have to a person of ordinary skill in the art.  Moreover, other language from the specification suggests that an IP phone and a server exist *apart from* the user., e.g., "[t]he settlement manager may be configured to maintain a log of actions performed by a user of the IP phone during a communication session with the server."  (Docs. 27-1 at 7; 40-1 at 31.)  The IP phone cannot also be the "user of the IP phone"; nor does it make sense that a server, as a "user of the IP phone," would conduct a communication session with itself.  The Court should reject Plaintiff's proposed construction of the terms "user of said IP Phone" and "said user" because it is unsupported by either intrinsic or extrinsic evidence.

Defendant contends that the terms should be construed as "a consumer operating the IP Phone."  (Doc. 37 at 16.)  The construction proposed by Defendant is a narrow one; it extends only to persons who can be classified as consumers.  (*Id*. at 17.)  It urges that its construction is derived from both the claim language and the written description in the specification.  (*Id*. at 16-17.)  It also argues that its position is supported by the inventors' testimony.  (*Id*. at 21-22.)

The intrinsic evidence cited by Defendant is compelling.  Claims 9 and 17 pertain to transactions, e.g., the user of the IP phone "selects one of said variety of offers" and the user

provides "search criteria resulting in said variety of offers." (Doc. 40-1 at 43-44.) Additional claim language references the user's contact and payment information–human consumers (and not things, as argued by Plaintiff) possess payment information. (*Id*.) The specification also lends support to Defendant's proposed construction. There are references to a user selecting an offer "by pressing certain areas in the screen with a finger" and the use of an IP phone to vote in an election, actions which can only be performed by persons. (*Id*. at 32, 42.) Other language in the written description also suggests that at least in the context of Claims 9 and 17, a user should be limited to a consumer. For example, the specification states that "[u]sers of TADS-enabled clients [IP phones] may be regarded as consumers by the vendors using TADS" and "[c]onsumers are the users of TADS client side elements [IP phones]." (*Id*. at 36-37.) Elsewhere, the specification states: "A TA [transactional application] is a relatively small hosted application that enables the user of the VoIP agent (a consumer) to complete commercial transactions with one or more vendors."[2] (*Id*. at 39.) Further down, the written description provides:

> Local search application allows the consumer to browse through products and services offered by vendors local to a specific geographical region. Sponsored programming application feature [sic] advertisements selected based on usage statistics, consumer demographics and other consumer information."

(*Id*.) Moreover, the extrinsic evidence–testimony of the inventors–also supports the Defendant's construction. Each of the inventors testified that a user is "whoever is operating the phone" and "the person that's ordering the pizza [completing the transaction] . . . ." (Docs. 40-4 at 162; 40-5 at 120.)

The Court should find that both the intrinsic and extrinsic evidence support Defendant's proposed construction of the terms "user of said IP phone" and "said user[.]" The Defendant's

---

[2] This language negates Plaintiff's alternative contention that it's domain specific applications can be users. (Doc. 48 at 10; 49 at 17.)

proposed construction should be adopted, and the terms "user of said IP phone" and "said user" should be construed "a consumer operating the IP Phone."

## IV.  CONCLUSION

The Court recommends that the following disputed terms of the '955 patent be construed as follows:

(1)     The terms "Internet Phone (IP) Phone" and "IP Phone" should be construed as  "a telephone which can operate and execute voice communication in the same way as conventional telephones either via a Plain Old Telephone System (POTS) or an IP network, and which can use the IP network for data applications."

(2)     The terms "user of said IP Phone" and "said user" should be construed as "a consumer operating the IP Phone."

In addition, the Court recommends that the following terms be construed as agreed by the parties and as set forth below:

(1)     The term "contextual search" should be construed as "a search using both query terms and contextual information.

(2)     The term "completes a transaction" should be construed as "receives delivery of a purchased service or product."

**SO RECOMMENDED**, this 30th day of August, 2013.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE